# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2471

_____

Clara Parkman,                                   *
                                                 *
        Plaintiff-Appellant,              *
                                                 *   Appeal from the United States
   v.                                            *   District Court for the
                                                 *   Eastern District of Arkansas.
Prudential Insurance Company of                  *
America; Armstrong World Industries,             *            [PUBLISHED]
Inc.,                                            *
                                                 *
        Defendants-Appellees.             *

_____

Submitted: January 13, 2006
Filed: March 1, 2006

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

PER CURIAM.

Clara Parkman appeals the district court's[1] decision granting summary judgment to Prudential Insurance Company of America ("Prudential") and Armstrong World Industries ("Armstrong"). Parkman argues, *inter alia*, that the district court erred when it concluded Prudential properly denied her benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. We affirm.

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

I.

Parkman worked for Armstrong in a medium duty job. During 2002, Parkman saw Kenneth Purvis, M.D., a number of times. Dr. Purvis diagnosed Parkman with "a trigger thumb" and tennis elbow. On December 23, 2002, Parkman was admitted to the hospital by Dr. Purvis because she was having acute lumbar spasms. Dr. Purvis noted that Parkman should be able to return to work by mid-January and commented that he doubted she would need further treatment other than physical therapy. In January 2003, Parkman saw Dr. Purvis again, complaining of leg pain. The doctor recommended physical therapy, and, on January 17, 2003, released Parkman to light duty work.[2] When Parkman returned to see Dr. Purvis in February, 2003, he noted in her chart that she had not returned to work because her employer had not been able to accommodate her light duty restriction. In March 2003, Dr. Purvis ordered an MRI and carotid doppler because Parkman had a family history of strokes. These tests revealed "no evidence of acute ischemia." Dr. Purvis noted that Parkman showed signs of depression. When she returned to see him in March 2003, Dr. Purvis observed that she "is beginning to really further give up" and recommended exercise. He also referred Parkman to a rheumatologist and a neurologist.

Parkman saw Tamer Alsebai, M.D., a rheumatologist, on March 11, 2003 and complained of back pain, noting that the pain caused her to have trouble riding her horse. Dr. Alsebai noted Parkman's condition was "probably" consistent with fibromyalgia and carpal tunnel syndrome. He also observed that she had mechanical lower back pain, fatigue, poor sleep, depressed mood, and multiple tender points. Dr. Alsebai stated Parkman had a "fair range of motion in all joints" and "good grip strength." Parkman then saw a neurologist on March 24, 2003, complaining of two dizzy spells and memory loss. The neurologist concluded Parkman's overall health

[2]Parkman never returned to work after being admitted to the hospital on December 23, 2002.

was unremarkable, noting she had small vessel disease. He ordered an echocardiogram, which showed Parkman's heart function to be normal.

In April, 2003, Parkman returned to Dr. Purvis because she was still having back spasms. Parkman told Dr. Purvis she could not return to work and that she was taking a muscle relaxant. Dr. Purvis stated he believed she was "using this as an opportunity to state she cannot return back into the work force" and observed that Parkman "certainly could hopefully be retrained to do some sort of other labor." He told Parkman that she would not be considered disabled for any occupation. Parkman underwent a functional capacity evaluation ("FCE"), which indicated Parkman was capable of only light duty work, as Parkman's grip and pinch abilities were low, limiting her "ability to use her hands for repetitive type work." Parkman was deemed "very consistent throughout the evaluation and passed all criteria for reliability."

Parkman saw Hugh A. Nutt, M.D., on August 4, 2003. During August and September of 2003, Parkman, Dr. Nutt, and Dr. Alsebai submitted information statements to Prudential for use in evaluating her application for long-term disability ("LTD") benefits. Dr. Nutt completed the "Attending Physician's Statement," noting that Parkman had been clinically diagnosed with fibromyalgia, back pain, and bilateral carpal tunnel. Dr. Nutt observed Parkman has difficulty with repetitive low-level lifting and that she should be limited to lifting twenty pounds or less, with "no bending, no stooping, no lifting, no repetitive type work that include[s] these activities." Dr. Nutt added that Parkman has decreased grip and pinch strength and stated Parkman should "never" return to work because she is "disabled."

On October 3, 2003, a physical therapist who reviews claims for Prudential determined that "[a]lthough [Parkman] reports she cannot work due to pain, the medical records do not support [a] condition of such a severity that should totally preclude [her] from performing her job duties." Prudential notified Parkman on October 6, 2003 that she was not entitled to benefits. Parkman appealed on January

10, 2004. She submitted two letters from Dr. Nutt in which he asserted Parkman was "totally disabled" and "physically unable to work" due to severe fibromyalgia, paresthesias of both hands, chronic mechanical low back pain, "GERD" and depression. Parkman also submitted a summary of a November 2003 visit to Dr. Alsebai in which he noted the diagnosed conditions Dr. Nutt had listed.

Prudential's Medical Director, Dr. Fegan, reviewed Parkman's claim in its entirety and concluded that "there is insufficient medical evidence of impairments that would preclude medium duty work." Dr. Fegan wrote a ten-page report summarizing Parkman's medical records and reviewing her alleged symptoms and limitations. He also commented on Parkman's test results, observing that the results of Parkman's FCE were "inconsistent with any of her claimed diagnoses." Dr. Fegan pointed out that Parkman scored "in the bottom percentiles of performance," a result that was inconsistent with Parkman's ability to drive. Dr. Fegan further noted that the disc degeneration on Parkman's MRI "can be found in persons without pain at work" and that the test did not "provide evidence of impairments that would preclude medium duty work." Based on Dr. Fegan's report, Prudential affirmed its initial decision denying Parkman benefits, notifying her by letter on March 15, 2004.[3]

On June 25, 2004, Parkman filed suit pursuant to ERISA. In January 2005, she amended her complaint to include a state law fraud claim. Parkman also moved for a new scheduling order, arguing her fraud claim entitled her to a jury trial. The district court denied Parkman's scheduling order motion, stating Parkman's state law fraud claim was preempted by ERISA. The district court then granted Prudential's motion for summary judgment. Parkman filed a Motion to Alter or Amend the district court's order, arguing the court erred by not reviewing her claim de novo. On April 27, 2005, the district court issued an order stating it had reviewed the record

[3]It appears from the record that Parkman's counsel received at least two of these letters, as counsel stated in a letter to the district court that "[b]y the grace of the Post Office" he received two misaddressed letters from Prudential.

-4-

again—this time de novo—and reached the same result. Parkman now appeals to this court, arguing that the district court failed to perform a proper de novo review and therefore erred in upholding Prudential's denial of LTD benefits. Parkman also argues the court erred in concluding ERISA preempts her state law fraud claim.

II.

We review a district court's decision regarding ERISA preemption de novo. Wilson v. Zoellner, 114 F.3d 713, 715 (8th Cir. 1997). ERISA supercedes "any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has observed this preemption language is "conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990). The Court has acknowledged, however, that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983). In determining whether a state action "relates to" an employee benefit plan covered by ERISA, we employ a two-part test. Wilson, 114 F.3d at 716. A law relates to a covered employee benefit plan for purposes of ERISA if it has (1) "a connection with" or (2) "reference to such a plan." California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 324 (1997).

In determining whether a state law has a forbidden connection to an ERISA plan, we "'look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.'"[4] Wilson, 114 F.3d at 717 (quoting Dillingham, 519 U.S. at 325). Parkman's state law claim for fraud is founded on her

---

[4]The elements of common law fraud in Arkansas, see Morris v. Valley Forge Ins. Co., 805 S.W.2d 948, 951 (Ark. 1991), do not contain a "reference to" ERISA. See Wilson, 114 F.3d at 716-17 (concluding Missouri state common law tort of negligent misrepresentation did not actually or implicitly refer to ERISA).

assertion that Prudential mishandled her claim by directly communicating with Parkman after she had retained an attorney and by indicating to Parkman that she did not need an attorney. We have stated, however, that ERISA preempts "'state common law tort and contract actions asserting improper processing of a claim for benefits' under an ERISA plan." Thompson v. Gencare Health Sys., Inc., 202 F.3d 1072, 1073 (8th Cir. 2000) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 43 (1987)); see also Hull v. Fallon, 188 F.3d 939, 943 (8th Cir. 1999) (stating where the essence of state claims for medical malpractice relates to the administration of plan benefits, those claims "fall squarely within the scope" of ERISA). Here, because the essence of Parkman's claim relates to the administration of plan benefits, it falls within the scope of ERISA. Accordingly, we hold the district court properly concluded that Parkman's state law fraud claim is preempted by ERISA.

III.

The district court initially applied a deferential standard of review in evaluating the plan administrator's decision denying Parkman benefits. However, after the court granted summary judgment to Prudential, Parkman filed a Motion to Alter or Amend the court's order, arguing de novo review was required. The court then issued an order stating that it had reconsidered Parkman's claim de novo and that its conclusion had not changed. Parkman now argues that the court erred in concluding that, under a de novo standard of review, Prudential properly denied her benefits.

If a plan reserves discretionary authority to the plan administrator, we apply a deferential standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 792 (8th Cir. 2003). A plan gives the administrator or fiduciary discretionary authority if it contains explicit discretion-granting language. Bounds v. Bell Atl. Enters. F.L.R.D. Plan, 32 F.3d 337, 339 (8th Cir. 1994). Armstrong's "Summary Plan Description" contains the following provision:

[Armstrong] . . . has delegated to the Claims Administrator the full and exclusive discretionary authority to interpret and construe the terms of the Plan, to determine all benefits and to resolve all questions arising from the claims administration, interpretation, and application of the Plan's provisions . . . including determinations as to whether a claimant is eligible for benefits, the amount and timing of benefits, and any other matter . . . about a claim raised by a claimant or identified by the Plan Administrator.

There can be no question that this provision contains express language granting discretionary authority to the plan administrator. Thus, a deferential standard of review applies.[5]

When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed. Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180-81 (8th Cir. 2001); McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence

---

[5]A less deferential standard of review would apply if Parkman could demonstrate "a palpable conflict of interest or a serious procedural irregularity existed" that caused a "serious breach of the plan administrator's fiduciary duty." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). In determining whether "procedural irregularities"occurred, we consider whether the plan administrator's decision "was made without reflection or judgment, such that it was 'the product of an arbitrary decision or the plan administrator's whim.'" Pralutsky, __F.3d at __, 2006 WL 130935, at *5 (quotation and citation omitted). Parkman argues a number of procedural irregularities transpired, including Prudential's failure to correctly address a number of letters to her counsel. Parkman also asserts Prudential mishandled her claim by directly communicating with Parkman after she had retained an attorney and by indicating to Parkman that she did not need an attorney. However, the record does not lead us to conclude the plan administrator committed irregularities so severe that we have "a total lack of faith in the integrity of the decision making process." Id. Thus, Parkman is not entitled to have her claim reviewed de novo. We note, however, that we agree with the district court that, even under a de novo review, Parkman's claim fails.

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." McGee, 360 F.3d at 924 (quotation and citation omitted). A plan administrator's discretionary decision is not unreasonable merely because "a different, reasonable interpretation could have been made." Id.

Parkman argues the district court abused its discretion by requiring her to provide objective evidence of her disability and by refusing to credit her consistent complaints of pain. She also asserts that the district court improperly disregarded her FCE and the opinions of her treating physicians. We have stated, however, that "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." Id. at 925; see also Pralutsky v. Met. Life Ins. Co., __F.3d__, 2006 WL 130935, at *4-5 (8th Cir. Jan. 19, 2006). Here, the plan administrator referred Parkman's claim to a physician employed by Prudential for review. The physician, Dr. Fegan, issued a ten-page summary of Parkman's medical history and observed that her treating physicians disagreed regarding the extent of Parkman's disability. In light of this disagreement, Dr. Fegan carefully reviewed Parkman's medical records and the various tests administered to gauge Parkman's condition. He concluded that the tests did not provide evidence of impairments that precluded Parkman from performing her job. Because this conclusion was reasonable and was supported by substantial evidence, we hold that the plan administrator did not abuse his discretion in denying Parkman's claim for LTD benefits.

Affirmed.

_____