# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 09-3561

_____

Michael Shane Atkins,

        Appellant,

    v.

Prudential Insurance Company;
UNITRIN, Inc., Long Term
Disability Plan,

        Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Western District of Arkansas.

[UNPUBLISHED]

_____

Submitted: September 21, 2010
Filed: December 13, 2010

_____

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.

_____

PER CURIAM.

      Michael Shane Atkins filed a complaint against The Prudential Insurance Company of America (Prudential) and Unitrin, Inc. Long Term Disability Plan (Plan), pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, claiming that they abused their discretion in discontinuing

Atkins's disability benefits. The district court[1] first denied Atkins's motion to compel discovery and later dismissed Atkins's claims with prejudice. Atkins appeals. For the following reasons, we affirm.

## I.

Atkins was employed by Unitrin, Inc., (Unitrin) as a field insurance agent. His job was classified as light duty, and his job duties included regularly soliciting business from existing policyholders, actively seeking to gain new policyholders, collecting premiums, and delivering newly issued policies. He participated in Unitrin's disability plan. Prudential is both the insurer of the Plan and the Plan's claims administrator. Prudential had the sole discretion to determine eligibility and entitlement to benefits in accordance with the terms of the Plan. Under the Plan, a person is disabled when Prudential determines that the person is "unable to perform the material and substantial duties of [his] own occupation due to [his] sickness or injury" and "[has] a 20% or more loss in [his] indexed monthly earnings due to that sickness or injury." (App. at 535.) The Plan further notes that "[a]fter 24 months of payments, [a person is] disabled when Prudential determines that due to the same sickness or injury, [he is] unable to perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training, or experience." (Id.)

In August 2005, Atkins informed Prudential that he was unable to work because of pain in his neck and right shoulder and numbness in his left arm and hand, and he began to receive short term disability (STD) benefits. Prudential decided to discontinue Atkins's disability benefits after February 12, 2006, because it determined that Atkins was not eligible for long term disability (LTD) benefits after that date.

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

Between June 2005 and April 2006, the record reflects that Atkins visited numerous doctors to address multiple physical complaints. In June 2005, he received epidural steroid injections to address neck pain resulting from cervical disc disease. In mid-August 2005, Dr. Shailesh Vora noted that Atkins had been diagnosed with neck pain and depression and directed him to remain off work until September 1, 2005, although Dr. Vora noted that Atkins's prognosis for returning to work was "good." (App. at 319.) Throughout the time period that followed, Dr. Vora continued to recommend that Atkins remain off work while he underwent testing. Atkins eventually received surgery to remove a cyst from his wrist in January 2006.

Initially when Atkins informed Prudential that he was unable to work in August 2005, Prudential began to make short term disability payments to Atkins. Over the next several months, multiple registered nurses employed by Prudential reviewed Atkins's file and concluded that his physical examinations did not suggest that he was unable to work, but Prudential continued to renew his benefits while it gathered more medical information. On January 9, 2006, Prudential informed Atkins that it would begin reviewing his claim as a claim for LTD benefits.

On January 26, 2006, Atkins informed Prudential that the next day he was having wrist surgery. Prudential approved LTD benefits for Atkins from January 28, 2006, to February 12, 2006, based on his wrist surgery. When it approved the LTD benefits, it explained that this was only because of his wrist condition. In a letter dated February 9, 2006, Prudential stated that it would discontinue his LTD benefits as of February 13, 2006, as there was nothing in Atkins's file to indicate that he would be unable to carry out his job duties after that date.

In April 2006, Atkins appealed Prudential's decision to discontinue his LTD benefits, asserting that he was now suffering from internal bleeding, that he was constantly in pain, and that he had complications with medication management. Following this, Prudential submitted Atkins's claim file to three independent

physicians for review: a physician who specialized in occupational medicine, a psychiatrist, and a neurologist. The three physicians all opined that there was no physical reason Atkins could not carry out his job duties. Following the review of Atkins's file by the independent physicians, in July 2006, Prudential concluded that it was appropriate to uphold its denial of LTD benefits effective February 13, 2006. In December 2006, Atkins appealed the denial decision. Prudential then referred Atkins's file for review by a neurologist who did not find any neurological basis for impairment. Prudential again upheld its denial of benefits and informed Atkins of this on January 16, 2007.

Following Prudential's decision, Atkins filed this lawsuit against Prudential, arguing that Prudential should not have discontinued his LTD benefits. Initially Atkins filed a motion to compel discovery, which the district court denied. Atkins wanted Prudential to fully and completely respond to his broad interrogatories and requests for production of materials which existed outside of the administrative record. Atkins asserted that Prudential's dual role as both the insurer of the Plan and as the claims administrator created a conflict of interest, and he sought discovery in order to determine the nature and extent of the conflict of interest. In denying the discovery motion, the district court agreed that Prudential had a conflict of interest but held that the administrative record itself should be a sufficient source for finding any procedural irregularities in Prudential's handling and decision-making on Atkins's claim which, when combined with the existing conflict of interest, would demonstrate an abuse of Prudential's discretion. Atkins then filed a motion for summary judgment. The district court held that Prudential did not abuse its discretion in denying disability benefits to Atkins because Prudential's decision that he was not disabled under the Plan's definition was supported by substantial evidence and was therefore reasonable. The district court then dismissed Atkins's claims with prejudice.

Atkins appeals, arguing that the district court should have granted both his motion to compel discovery and his motion for summary judgment.

-4-

First, Atkins contends that the district court erred in failing to compel discovery. We review a district court's refusal to compel discovery for abuse of discretion. Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 945 (8th Cir. 2010). Atkins argues that we should apply a *de novo* standard of review to this issue, but he cites nothing to support this, and the standard of review is settled.

"In ERISA cases, the general rule is that review is limited to evidence that was before the administrator." Id. Atkins asserts that discovery is necessary to establish Prudential's decision-making process. Atkins sought materials regarding how disability claims are adjusted, whether there were additional oral communications, how claims like Atkins's have been handled in other cases, and the procedures Prudential has followed to ensure consistent decision making in similar cases.

The Supreme Court has recently noted that a plan administrator who (like Prudential here) is both an insurer of the Plan and a claim administrator operates under a conflict of interest. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 114 (2008) (noting that while it is slightly different when a third party and not the employer acts as an insurer and claims administrator, "for ERISA purposes a conflict exists" for the third party). We have not yet decided whether Glenn affects discovery limitations under ERISA, see Chronister v. Unum Life Ins. Co. of Am., 563 F.3d 773, 775 n.2 (8th Cir. 2009), and Atkins's argument that Glenn controls the outcome of this decision is unconvincing. This case is comparable to Jones, in which we held that because ReliaStar conceded that it was both insurer and administrator of the plan and because the administrative record was sufficient to permit a fair evaluation of the decision, the district court did not abuse its discretion in denying Jones's request for discovery. Jones, 615 F.3d at 945.

Atkins asserts that Prudential's conflict of interest is sufficient to justify the need for greater discovery. However, here, like in Jones, the administrative record is sufficient to permit a fair evaluation of Prudential's decision. See id. Thus, Atkins has

failed to establish that the district court abused its discretion in failing to compel discovery.  See id. at 944.

Second, Atkins asserts that the district court erred in holding that Prudential did not abuse its discretion in denying Atkins LTD benefits.  "We treat the district court's grant of judgment on the administrative record as a form of summary judgment and review it *de novo*, 'viewing the case from the same position as the district court.'" Riddell v. Unum Life Ins. Co. of Am., 457 F.3d 861, 864 (8th Cir. 2006) (quoting Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 805 (8th Cir. 2002)).  "Under this standard of review, we reverse the plan administrator's decision only if it is arbitrary and capricious."  Jackson v. Prudential Ins. Co. of Am., 530 F.3d 696, 701 (8th Cir. 2008) (internal quotation marks and alteration omitted).

"When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, 'it should not be disturbed.'" Ratliff v. Jefferson Pilot Fin. Ins. Co., 489 F.3d 343, 348 (8th Cir. 2007) (quoting Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180-81 (8th Cir. 2001)).  "The discretionary decision of a plan administrator is not unreasonable merely because a 'different, reasonable interpretation could have been made.'" Id. (quoting Parkman v. Prudential Ins. Co. of Am., 439 F.3d 767, 773 (8th Cir. 2006)).

The district court correctly noted that Prudential made a thorough review of Atkins's claims and his file.  We have held that "'[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence.'" Jackson, 530 F.3d at 701 (quoting Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir. 2006)).  Throughout the review and appeal process, Prudential consulted numerous doctors and nurses, both internal and external, in reviewing Atkins's file and his claim for benefits.  Those medical professionals found no objective evidence in Atkins's file to support his claim for benefits.  This lack of objective evidence severely undercuts

Atkins's claim that he was entitled to disability benefits, and it was not unreasonable for Prudential to deny Atkins benefits based on the lack of objective evidence.

Atkins cites Glenn in noting that a court should consider an administrator's conflict of interest when evaluating the administrator's decision to deny benefits. While this is true, a conflict of interest alone is insufficient to find that Prudential abused its discretion in denying Atkins benefits. The conflict of interest is one of several factors to consider and may serve as a tiebreaker if the other factors are closely balanced. See Glenn, 554 U.S. at 117 ("[W]hen judges review the lawfulness of benefit denials, they will often take into account of several different considerations of which a conflict of interest is one. . . . In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced."). No factors in this case were so closely balanced such that Prudential's conflict of interest would act as a tiebreaker to result in an abuse of discretion by Prudential in its consideration of Atkins's claim.

Finally, Atkins asserts that Prudential violated the terms of its policy and the applicable law by terminating his LTD benefits without showing some significant change in the information it had. However, Prudential only extended Atkins's STD benefits while it was reviewing his file and medical claims. Prudential's decision to review Atkins's claim as a claim for LTD benefits was subject to medical review. When Prudential approved Atkins's claim for LTD benefits effective January 26, 2006, for the wrist surgery, it made it clear that the benefits were only granted through February 12, 2006, to permit recovery time. This is not a case in which a plan administrator found a claimant disabled for an extended duration and then overruled that decision years later as in the cases Atkins cites. Cf. McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 589 (8th Cir. 2002) (finding the district court erred in granting judgment to the insurance company when it determined that the plaintiff was not disabled after paying disability benefits for two years).

Prudential performed a very thorough analysis of Atkins's file and claim, and we cannot say that its decision to deny Atkins benefits was arbitrary and capricious. The district court did not err in granting judgment to Prudential on the administrative record.

Accordingly, the judgment of the district court is affirmed.

_____