# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2367
_____

Melissa A. McIntyre

*Plaintiff - Appellee*

v.

Reliance Standard Life Insurance Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 18, 2020
Filed: August 25, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In this action arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, plan administrator Reliance Standard Life Insurance Company ("Reliance") appeals the district court's grant of summary judgment in favor of plan beneficiary Melissa McIntyre. Because the district court erred in reviewing Reliance's benefits denial *de novo* rather than for an abuse of discretion, we vacate its judgment and remand this case for further proceedings.

# I.

All her life, McIntyre has suffered from Charcot Marie Tooth Syndrome ("CMT"), a degenerative neurological condition affecting peripheral nerves such as those in the hands and feet. From 2003 to 2011, she worked as a nurse employed by the Mayo Clinic Health System. During that time, she participated in an employer-sponsored long-term disability plan ("Reliance plan") governed by ERISA and funded by a group insurance policy issued and administered by Reliance ("Reliance policy"). In July 2011, McIntyre resigned because of CMT-related difficulties performing her duties.

Starting in 2011, she applied for a series of benefits from the Reliance plan. The Reliance policy paid a "Monthly Benefit" if "an Insured" was "Totally Disabled" within the meaning of the policy. The policy contained two definitions of "Totally Disabled." The definition applicable for the first twenty-four months in which a benefit was payable ("short-term disability definition") provided that "Totally Disabled" means "an Insured cannot perform the material duties of his/her Regular Occupation," meaning "the occupation the Insured is routinely performing when Total Disability begins." The definition after that period ("long-term disability definition") provided that "Totally Disabled" means "an Insured cannot perform the material duties of Any Occupation," meaning "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience." The policy also stated that Reliance was the "claims review fiduciary" and had "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."

In 2011, McIntyre applied for and received benefits under the short-term disability definition. In 2013, Reliance began evaluating whether McIntyre would remain eligible for benefits under the long-term disability definition. This evaluation process continued until December 2015, when Reliance concluded McIntyre was no longer eligible for benefits because she was capable of working in "Any Occupation." In February 2016, Reliance notified McIntyre she would no longer

receive benefits under the Reliance plan because she was ineligible under the long-term disability definition.

On May 31, 2016, McIntyre filed an appeal with Reliance, challenging its eligibility determination under the long-term disability definition. After delays caused by both McIntyre and Reliance, she eventually underwent an independent medical examination in December 2016. The doctor who performed that examination concluded McIntyre was "capable of working full time in a sedentary position." Following this examination, Reliance upheld its original determination that McIntyre was not eligible for benefits under the long-term disability definition and informed her of the same in late December 2016.

McIntyre then filed suit against Reliance. *See* 29 U.S.C. § 1132(a)(1)(B). The parties cross-moved for summary judgment. Ruling on these motions, the district court concluded it would review Reliance's decision *de novo* and, under that standard of review, determined that McIntyre was entitled to benefits under the long-term disability definition. Reliance appeals, arguing that the district court applied the wrong standard of review and that its denial of benefits should be affirmed under the correct standard of review.

## II.

We review *de novo* the district court's determination of the appropriate standard of review under ERISA. *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 587 (8th Cir. 1999). Generally, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the benefit plan gives the administrator such discretionary authority, "a court should review the plan administrator's decision only for abuse of discretion." *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 899 (8th Cir. 1996). It is undisputed here that

Reliance had such discretionary authority, thereby "trigger[ing] abuse-of-discretion review." *Leirer v. Proctor & Gamble Disability Benefit Plan*, 910 F.3d 392, 396 (8th Cir. 2018).

The district court nevertheless decided that a *de novo* standard applied on the basis of our caselaw providing that "less deferential review" applies despite a grant of such discretionary authority if (1) either the administrator faces a "palpable conflict of interest" or a "serious procedural irregularity" arose in the review process, and (2) either the conflict or the procedural irregularity "caused a serious breach of the plan administrator's fiduciary duty" to the claimant. *See Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), *abrogated in part by Metro. Life Ins. v. Glenn*, 554 U.S. 105, 115-16 (2008). Specifically, the district court found a palpable conflict of interest present insofar as Reliance "both determines and pays claims" and ostensibly has a "history of biased claims administration." The district court also found a serious procedural irregularity; namely, Reliance's "long delay in deciding McIntyre's appeal." It then concluded that both of these caused Reliance to breach its fiduciary duty owed to McIntyre and therefore decided to "review McIntyre's benefits claim de novo." McIntyre defends the district court's application of *de novo* review under our caselaw and argues in the alternative that a *de novo* standard should apply in light of authorities from other circuits whose approach she invites us to adopt.

A.

The key precedent underlying the district court's decision to apply a *de novo* standard is *Woo*, 144 F.3d 1157. In *Woo*, we recognized a court could apply "less deferential review" in certain circumstances even when the administrator possesses discretionary authority to interpret and apply the policy. *Id.* at 1160. The district court found these circumstances present and evidently read *Woo*'s endorsement of "less deferential review" to mean *de novo* review. This reading was error.

-4-

To begin, the parties agree that the Supreme Court's decision in *Metropolitan Life Insurance v. Glenn*, 554 U.S. 105 (2008), abrogated at least the conflict-of-interest component of *Woo*, as we have repeatedly recognized. *See, e.g.*, *Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 320 (8th Cir. 2018) (noting that *Glenn* "abrogated *Woo* to the extent *Woo* allowed a less deferential standard of review based on *merely* a conflict of interest" (citing *Wrenn v. Principal Life Ins.*, 636 F.3d 921, 924 n.6 (8th Cir. 2011)). It is thus undisputed that the district court erred in relying on the presence of a conflict of interest to justify *de novo* review.

The district court, however, also relied on the presence of "serious procedural irregularities" to justify *de novo* review. We have repeatedly avoided deciding whether *Glenn* "abrogated the 'procedural irregularity' component of the *Woo* sliding-scale approach." *Leirer*, 910 F.3d at 396 ("We need not decide that issue here . . . ."); *Boyd*, 879 F.3d at 320 ("We need not address the validity of th[e procedural-irregularities] component . . . ."); *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 830 n.3 (8th Cir. 2014) ("Our circuit has not definitively resolved the impact of *Glenn* on the 'procedural irregularity component of the *Woo* sliding scale approach.' *See Wrenn*[, 636 F.3d at 924 n.6]. We need not resolve this issue here . . . ."). We once again avoid answering that question because we find a more fundamental error in the district court's application of *Woo*: *Woo* never permitted *de novo* review even in cases where procedural irregularities are present.[1]

---

[1]There is reason to doubt *Woo*'s sliding scale approach survived *Glenn* in any respect. *See Glenn*, 554 U.S. at 116 (noting it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict"); *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010) ("We take *Glenn*'s admonition against special rules to apply beyond the particular issue addressed in *Glenn*."); *Keiser v. Conagra Foods, Inc.*, 57 F. Supp. 3d 399, 406 (M.D. Pa. 2014) (recognizing that although "*Glenn* explicitly deals only with conflicts of interest," "the case impliedly extended [its] holding to procedural irregularities as well"). It may very well be that, under *Glenn*, neither conflicts of interest nor procedural irregularities trigger idiosyncratic standard-of-proof rules but are simply "factors to be weighed in determining whether a plan administrator with discretionary authority . . . abused that discretion." *See Ingram v. Terminal R.R.*

-5-

In *Woo*, the ERISA beneficiary argued that we should not review the administrator's benefits denial "under the traditional abuse of discretion standard because of procedural irregularities" in the benefits determination and because the administrator had a "conflict of interest." 144 F.3d at 1160. We identified a "two-part gateway" by which the beneficiary could "obtain a less deferential review": the beneficiary had to "present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." *Id.* at 1160-61. We concluded the beneficiary had satisfied this two-part test, "warranting a less deferential standard of review." *Id.* at 1161.

We then turned to what this standard might look like, considering two approaches taken by other circuits in similar circumstances. *Id.* On the one hand, some courts "always review[ed]" a benefits denial "for an abuse of discretion" but adopted a "'sliding scale' approach" to the standard of proof the plan administrator had to satisfy to show the denial was not an abuse of discretion. *Id.* (citing *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825-27 (10th Cir. 1996)). On the other hand, other courts in effect reviewed a benefits denial *de novo*. *Id.* (citing *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1566-67 (11th Cir. 1990)).

We "adopt[ed] the 'sliding scale' approach," and in doing so we recognized that it still "requires the courts to apply an abuse of discretion analysis." *Id.* We then applied this "modified abuse of discretion standard," reviewing the benefits denial for an abuse of discretion but requiring the administrator to support its decision with "substantial evidence bordering on a preponderance" rather than merely "substantial evidence." *Id.* at 1162-63. At no point did we state that the sliding scale approach would warrant a change in the standard of review from abuse of discretion to *de novo*—in fact, some of the authorities on which we relied clearly

---

*Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 631 (8th Cir. 2016). Given conflicting circuit precedent on this point, however, *see Wrenn*, 636 F.3d at 924 n.6, we follow the lead of prior panels and avoid resolving the issue now, *see id.*

disclaimed such an understanding of that approach. *See id.* at 1161 (citing *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998) (noting how, while we had previously "contemplated the application of a less stringent standard of review in situations involving substantial procedural irregularities," "[w]e did not suggest . . . that a de novo standard was appropriate" but rather suggested "a less deferential abuse of discretion standard" might apply (internal quotation marks omitted))); *id.* at 1162 (citing *Ellis v. Metro. Life Ins.*, 126 F.3d 228, 233 (4th Cir. 1997) ("[I]n no case does the court deviate from the abuse of discretion standard.")).

Notwithstanding the fact that the *Woo* sliding scale approach did not authorize departure from the abuse-of-discretion standard of review, *Woo* came to be read by us as providing a gateway to *de novo* review. *See, e.g.*, *Johnson v. United of Omaha Life Ins.*, 775 F.3d 983, 987 (8th Cir. 2014); *Hackett v. Standard Ins.*, 559 F.3d 825, 830 (8th Cir. 2009); *Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033, 1035 n.1 (8th Cir. 2007); *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 772 n.5 (8th Cir. 2006) (per curiam).

The confusion appears to stem from a sentence in *Woo* in which we noted that "the 'sliding scale' analysis . . . adheres to our decision in *Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263, 1265 (8th Cir. 1997), where the egregious circumstances essentially required the court to give no deference to the administrator's decision." *Woo*, 144 F.3d at 1161-62. In *Armstrong*, we concluded that the "continuing conflict" present when the administrator of an ERISA plan is also its insurer permitted a court to review *de novo* the conflicted administrator's benefits decision. 128 F.3d at 1265, *abrogated by Glenn*, 554 U.S. at 112, 115 (holding that this sort of "dual role" conflict did not permit "a change in the *standard* of review, say, from deferential to *de novo* review," but instead was simply to be weighed as a factor in the abuse-of-discretion analysis).

Later panels appeared to read *Woo*'s purported "adhere[nce]" to *Armstrong* as an indication that *de novo* review was permitted if *Woo*'s two-part test was satisfied, whether by procedural irregularities or conflicts of interest. In *Morgan v.*

*Contractors, Laborers, Teamsters & Engineers Pension Plan*, for example, we cited *Woo* for the proposition that "a less deferential standard of review" may apply when serious procedural irregularities are present, found them present, concluded the second part of the *Woo* test was also satisfied, and then, citing to *Armstrong*, held "that these circumstances require us to review the [administrator's] decision to deny benefits de novo." 287 F.3d 716, 722-23 (8th Cir. 2002); *see also Schatz v. Mut. of Omaha Ins.*, 220 F.3d 944, 948 n.7. (8th Cir. 2000) (reading *Woo* and *Armstrong* together to mean that "if there are 'egregious circumstances,' *Woo*, 144 F.3d at 1162, then our review is de novo"); *cf. House v. Paul Revere Life Ins.*, 241 F.3d 1045, 1048 (8th Cir. 2001) (citing *Woo* and *Armstrong* together for the proposition that "conflicts of interest or procedural irregularities . . . may prompt a more searching review").

Three data points, however, should have tipped off future panels that *Woo*'s dictum about adherence to *Armstrong* was not a cue that *Woo*'s sliding scale approach was a gateway to *de novo* review. *See Pinto v. Reliance Standard Life Ins.*, 214 F.3d 377, 391-92 (3d Cir. 2000) (recognizing the discrepancy between *Armstrong* and *Woo*), *abrogated on other grounds by Glenn*, 554 U.S. 105; *accord West v. Aetna Life Ins.*, 171 F. Supp. 2d 856, 874-75 (N.D. Iowa 2001). First, *Woo* and *Armstrong* are facially irreconcilable. *See* Roger C. Siske et al., *What's New in Employee Benefits: A Summary of Current Case and Other Developments* 121 (ALI-ABA Course of Study 1998) ("Although the *Woo* court attempted to harmonize its decision and that of the *Armstrong* court, the two decisions really are at odds."). *Woo* held that the presence of a "palpable conflict of interest" could trigger "the 'sliding scale' approach," which "*requires* the courts to apply an abuse of discretion analysis," simply "taking into consideration the conflict," 144 F.3d at 1160-61 (emphasis added); while *Armstrong* held that *de novo* review was authorized when the administrator "faces a continuing conflict in playing the dual role of administrator and insurer of the health benefits plan," 128 F.3d at 1265. Second, the *Woo* panel followed a Tenth Circuit decision to adopt the sliding scale approach, *see* 144 F.3d at 1161 (citing and following *Chambers*, 100 F.3d at 825-27), while the *Armstrong* panel explicitly declined to follow that same decision's "'sliding scale'

approach," *see* 128 F.3d at 1265 (citing and declining to follow *Chambers*, 100 F.3d at 824-27). Third, we found "egregious conduct" present in *Woo* yet still applied only a "modified abuse of discretion standard" to review the administrator's decision, undermining any notion that "egregious circumstances" could trigger *de novo* review under *Woo*. 144 F.3d at 1162-63.[2]

Unfortunately, this misunderstanding of *Woo* persisted, albeit uniformly in dicta. In some cases, we overtly suggested, or at least operated under the premise, that *Woo* sanctioned *de novo* review. *See, e.g.*, *Ingram*, 812 F.3d at 631 (acknowledging the beneficiary's argument that "we should . . . apply a less deferential *de novo* standard of review" under *Woo*'s two-part test but declining to do so because "none of the conflicts of interest and procedural irregularities . . . warranted departure from the abuse-of-discretion standard of review"); *Johnson*, 775 F.3d at 987 & n.1 (noting that "application of the de novo standard might apply" under *Woo* but declining to address whether the procedural-irregularities component of *Woo* was still good law post-*Glenn* because the beneficiary failed to establish that procedural irregularities existed); *Wade v. Aetna Life Ins.*, 684 F.3d 1360, 1362 & n.2 (8th Cir. 2012) (assuming that the procedural-irregularities component of "*Woo* still applies" post-*Glenn* but concluding that "the de novo standard [the beneficiary] suggests is not warranted in situations such as this"); *Hackett*, 559 F.3d at 829-31 (discussing what "a claimant seeking de novo review" under *Woo* had to show but reversing and remanding on the ground that the district court failed to take the administrator's conflict of interest into account when reviewing its decision for an abuse of discretion); *Smith*, 474 F.3d at 1035 n.1 (commenting that "[a] plan administrator's decision may be subject to de novo review" under *Woo* but noting that the beneficiary on appeal "does not contest that the applicable standard of review is the abuse-of-discretion standard"); *Parkman*, 439 F.3d at 772 n.5 (suggesting that

---

[2]Additionally, Judge Beam, the author of *Woo*, dissented in part in *Armstrong*, calling the *Armstrong* panel's discussion about *de novo* review "essentially[] obiter dictum" and contending that "the de novo standard adopted is directly contrary to Supreme Court precedent." *See Armstrong*, 128 F.3d at 1266 (Beam, J., concurring in part and dissenting in part).

the beneficiary would have been entitled "to have her claim reviewed de novo" under *Woo* but concluding *Woo* was not triggered).

In other cases, while we did not explicitly treat *Woo* as if it authorized *de novo* review, we still suggested *Woo* permitted review under a standard other than abuse of discretion. *See, e.g.*, *Waldoch*, 757 F.3d at 830 n.3 (suggesting that *Woo* authorized "changing the standard of review from abuse of discretion to a less deferential standard" but concluding no such change was permitted in that case because the beneficiary "failed to establish that any procedural irregularities exist"); *Wrenn*, 636 F.3d at 924 n.6 ("*Woo* held a less deferential standard of review than abuse of discretion applied . . . . Because we conclude [the administrator] abused its discretion, we do not address the extent to which *Glenn* may have changed the procedural irregularity component of *Woo*'s sliding-scale approach."); *Hamilton v. Standard Ins.*, 516 F.3d 1069, 1073-74 & n.5 (8th Cir. 2008) (noting that *Woo*'s "sliding scale approach" is "somewhere between abuse of discretion and de novo" but declining to address the proper standard because the administrator's decision was affirmable "even under a de novo standard of review"); *Davolt v. Exec. Comm. of O'Reilly Auto.*, 206 F.3d 806, 809 (8th Cir. 2000) (treating *Woo*'s sliding scale approach as an "intermediate" standard of review between abuse of discretion and *de novo* but declining to decide the proper standard "because any standard of review . . . will yield the same result").

Regardless, none of these later decisions control to the extent they treat *Woo* as providing a gateway to *de novo* review or some other heightened form of review other than abuse of discretion—notions at odds with *Woo* itself. First, as previously noted, in most of the cases in which we treated *Woo* as permitting departure from the abuse-of-discretion standard, we did so in dicta. "[W]hen an issue is not squarely addressed in prior case law, we are not bound by precedent through *stare decisis*," and we "need not follow dicta." *Passmore v. Astrue*, 533 F.3d 658, 660-61 (8th Cir. 2008). Second, under *Mader v. United States*, when we are "faced with conflicting panel opinions," we must follow the "earliest opinion." 654 F.3d 794, 800 (8th Cir. 2011) (en banc). Obviously, all of our precedents mischaracterizing the holding in

-10-

*Woo* postdate *Woo*, and under *Mader* we must follow *Woo* rather than subsequent cases misstating the holding in *Woo* and even, as in *Morgan*, misapplying *Woo*. *See, e.g.*, *NLRB v. Leiferman Enters., LLC*, 649 F.3d 873, 879 n.1 (8th Cir. 2011) (declining to follow a subsequent panel precedent that "misread[]" an earlier panel precedent and so was "squarely at odds with what that [earlier] case actually held"); *United States v. Gaines*, 639 F.3d 423, 428 n.4 (8th Cir. 2011) (following the rule of a prior panel precedent even though, "over the course of several iterations" in subsequent precedential decisions, the rule "inadvertently evolved" into something other than what the prior panel held).

In sum, the district court erred in treating a conflict of interest as a trigger for *de novo* review rather than simply as a factor in determining whether Reliance abused its discretion. *See Glenn*, 554 U.S. at 115. The district court also erred in treating an ostensibly serious procedural irregularity as a trigger for *de novo* review rather than for *Woo*'s "'sliding scale' approach," which "require[d] the [district] court[] to apply an abuse of discretion analysis," simply "taking into consideration the . . . procedural irregularity." *See Woo*, 144 F.3d at 1161.[3]

B.

Defending the district court's decision to apply *de novo* review on alternative grounds, McIntyre invites us to adopt other circuits' approach permitting district courts to review benefits denials *de novo* in the face of an administrator's "decisional delay" beyond the deadline prescribed in ERISA's implementing regulations or the plan itself.[4] For instance, McIntyre calls our attention to *Fessenden v. Reliance*

---

[3]We emphasize that, at most—and only if the procedural-irregularities component of *Woo* survived *Glenn*, *but cf. supra* note 1—*Woo* would permit the district court to "require that the record contain substantial evidence bordering on a preponderance to uphold [Reliance's] decision" if the district court determines the procedural irregularities here are "egregious." *See Woo*, 144 F.3d at 1162.

[4]The regulations in effect before 2017 gave the administrator forty-five days from "receipt of the claimant's request for review" to "notify [the] claimant" of its

-11-

*Standard Life Insurance*, in which the Seventh Circuit held that when an administrator "fail[s] to issue a decision" in an internal appeal of a benefits denial "within the timeline mandated by the regulations," a *de novo* standard of review applies notwithstanding a grant of discretion to the administrator in the ERISA plan. 927 F.3d 998, 999-1000 (7th Cir. 2019). She also identifies cases in other circuits adopting a similar rule. *See, e.g.*, *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798-99 (10th Cir. 2010) (holding that an administrator's decision is subject to *de novo* review if it was issued "substantially outside the time period within which the Plan vested [the administrator] with discretion to interpret and apply the Plan"); *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005) (holding "that a 'deemed denied' claim"—a claim that, under a prior iteration of the ERISA regulations, was denied by operation of law if the administrator failed to issue a decision by the prescribed deadline in the regulations—"is entitled to de novo review").

Such a rule, however, is not the law of our circuit. Consider *Johnson*, in which the district court found procedural irregularities present and concluded (mistakenly, *see supra* Section II.A) that *de novo* review thus was warranted under *Woo*. 775 F.3d at 988. As relevant here, one of the procedural irregularities was the administrator's "failure to timely process the [beneficiary's] claims." *Id.* (brackets omitted). Specifically, the beneficiary appealed the initial denial of her long-term disability claim on August 27, 2010. *See Johnson v. United of Omaha Life Ins.*, No. 8:11CV296, 2013 WL 942511, at *9-10 (D. Neb. Mar. 11, 2013). The administrator denied the appeal on January 28, 2011, meaning the appeal was pending for 154

---

decision on an internal appeal from a denial of disability benefits and allowed for one forty-five-day extension of that deadline. *See* 29 C.F.R. § 2560.503-1(i)(1)(i) (2016); *id.* § 2560.503-1(i)(3)(i). The regulations also provided for tolling of this deadline in limited circumstances. *See id.* § 2560.503-1(i)(4). McIntyre filed her appeal with Reliance on May 31, 2016, and Reliance notified McIntyre of its decision on December 22, 2016, well beyond the maximum ninety-day period. While the parties argue about how much time should be deemed tolled, Reliance does not dispute that its decision came after the deadline had passed.

days. *See id.* at *11.[5] Under both the terms of the policy at issue there as well as the governing regulations at the time, the administrator was required to issue a decision within forty-five days of receipt of the appeal, with only one forty-five-day extension of that initial forty-five-day period permitted, for a maximum total of ninety days. *See* 29 C.F.R. § 2560.503-1(i)(1)(i) (2009); *id.* § 2560.503-1(i)(3)(i). Tolling of this deadline was permitted in limited circumstances, *see id.* § 2560.503-1(i)(4), but it does not appear the administrator in *Johnson* had any basis to argue for tolling, *see Johnson*, 2013 WL 942511, at *10-11. Thus, just like Reliance here, the administrator in *Johnson* failed to issue a decision regarding the appeal within the prescribed timeframe. This untimeliness (and a number of other procedural irregularities) notwithstanding, we reversed the district court and "determined the abuse-of-discretion standard was the appropriate standard for the district court to apply." *Johnson*, 775 F.3d at 988-89.

Whatever may be the law in other circuits, it is apparent in light of *Johnson* that, in our circuit, the administrator's decisional delay on appeal does not in and of itself trigger *de novo* review. Indeed, under circuit law, *de novo* review is not triggered in this context unless the administrator wholly fails "to act on an appeal" and that failure "raises serious doubts about the result reached by the plan administrator" in its initial denial. *See Seman v. FMC Corp. Retirement Plan for Hourly Emps.*, 334 F.3d 728, 733 (8th Cir. 2003) (citing *McGarrah v. Hartford Life Ins.*, 234 F.3d 1026, 1031 (8th Cir. 2000), *abrogated in part on other grounds by Glenn*, 554 U.S. 105). Deciding an appeal after a prescribed deadline is obviously not a wholesale failure to act on an appeal. The administrator's decisional delay, then, "does not raise the standard of review from abuse of discretion to de novo." *See id.* In light of our caselaw, we must decline McIntyre's invitation to follow the law of other circuits on this point.

---

[5]The district court erroneously stated the appeal was denied on "January 28, 2010." A review of the record citation provided by the district court indicates the court meant January 28, 2011.

McIntyre suggests we should extend *McGarrah* and *Seman* so that both a wholesale failure to act on an appeal and a decisional delay on appeal are treated as triggers for *de novo* review, arguing that a decisional delay "is just a different degree of failure to act." This contention misunderstands the rationale underpinning the rule of *McGarrah* and *Seman* and thus blurs the material distinction between a wholesale failure to act and a decisional delay.

As we explained in *Seman*, the administrator's wholesale failure to act on an appeal can trigger *de novo* review because, in certain circumstances—when the initial denial was based on an incomplete record, the beneficiary developed the record more fully on appeal, but the administrator failed to reconsider the matter in light of the developed record—the failure to act on an appeal is "equivalent" to failing "to render a decision" at all concerning the claim. *See* 334 F.3d at 733 (citing *Mansker v. TMG Life Ins.*, 54 F.3d 1322, 1328 (8th Cir. 1995) (holding that the administrator's "failure to render a decision on certain issues" means that "the district court could . . . decide the issues de novo" by reasoning, in essence, that if the administrator's discretion is not exercised, there can be no review for an abuse of that discretion)). A delayed decision on appeal made after the beneficiary has fully developed the record is different in kind than the wholesale failure to act on an appeal we found equivalent to no decision at all in *Seman*. Delayed decisionmaking thus does not come within the rule of *McGarrah* and *Seman*.

In short, under circuit law, the administrator's delay in deciding an appeal is not a trigger for *de novo* review. It is, rather, a factor to be considered by the district court when reviewing the administrator's decision for an abuse of discretion. *See Woo*, 144 F.3d at 1161. Other circuits may opt for a different approach, *see Nichols*, 406 F.3d at 109 (recognizing *Seman* as part of a three-way circuit split but declining to follow it), but we are bound by our circuit's law on this point.

**III.**

Reliance asks us to apply the abuse-of-discretion standard of review and reverse the district court by finding that Reliance did not abuse its discretion in denying McIntyre's claim. Ordinarily, remand is appropriate when the district court errs by reviewing the administrator's benefits decision under the wrong standard of review. *See Woo*, 144 F.3d at 1162 n.3. We see no reason to depart from that protocol here, *cf. id.*, particularly given that "review of the plan administrator's denial of benefits" in this case "is a highly fact-intensive inquiry," *see Seman*, 334 F.3d at 734.

Accordingly, we vacate the judgment of the district court and remand for the district court to review Reliance's benefits decision for an abuse of discretion consistently with *Woo*, *Glenn*, and this opinion.

_____